# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

**DIRECTV, INC.,**

        **Plaintiff,**

**v.**                                                **Case No. 04-C-324**

**JEFFREY KOMPAS,**

        **Defendant.**

## DECISION AND ORDER

The plaintiff, DIRECTV, Inc. ("DTV"), filed suit against the defendant Jeffrey Kompas ("Kompas"), seeking damages and injunctive relief for alleged violations of the Federal Communications Act of 1934, as amended, 47 U.S.C. § 605 (2004), and the Electronic Communications Privacy Act, 18 U.S.C. §§ 2510-2521 (2004). Before the Court is Kompas's motion for summary judgment.

### BACKGROUND

DTV is the nation's largest digital satellite television provider. (Plaintiffs' Proposed Findings of Fact ("PPFOF") ¶ 1.) In order to provide its subscribers with satellite television, DTV must provide certain hardware to its subscribers, including a satellite dish, a receiver/decoder (IRD), and an access card to operate the IRD. (*Id.* at ¶ 6.) DTV encrypts

1

its signals, and the access card descrambles the encrypted signals based on the programming package purchased by the subscriber. (*Id.* at ¶ 7.)

When DTV transmits its encrypted signals, the signals are subject to electronic hijacking by unauthorized access cards that can descramble the signals. (*Id.* at ¶ 13.) DTV disables these unauthorized access cards by electronically sending what are called Electronic Counter Measures ("ECMs"). (*Id.* at ¶ 14.) ECMs target unauthorized access cards and disable them. (*Id.*)

On Sunday, January 21, 2001, DTV released an ECM that rendered certain unauthorized access cards inoperable. (*Id.* at ¶ 19.) Due to the effectiveness of this ECM, it became known as the "Black Sunday ECM" in the piracy community. (*Id.*) In response to the "Black Sunday ECM," a business called H3-Electronics, which focused primarily on designing and selling pirate access devises, provided printed circuit board devices known as Bootloaders. (*Id.* at ¶ 17.) The Bootloader is used in conjunction with an unauthorized access card, and provides a "glitch" that circumvents the effect of the "Black Sunday ECM." (*Id.* at ¶¶ 21-22.)

On April 4, 2002, DTV, with the assistance of the United States Marshals, executed Writs of Seizure at H3-Electronics. (*Id.* at ¶ 16.) Pursuant to this raid and the subsequent lawsuit that DTV brought against H3-Electronics, DTV discovered a substantial body of sales records, including evidence that Kompas purchased four Bootloaders from H3-

Electronics on September 14, 2001, and that he bought an additional Bootloader from H3-Electronics on December 4, 2001. (*Id.* at ¶ 17.)

Kompas does not dispute that he purchased the Bootloaders in September and December of 2001, but he alleges that he bought them for his friend, Dennis Phelps. (Defendant's Proposed Findings of Fact ("DPFOF") ¶ 5.) Kompas claims that Phelps was using the Bootloaders to create an invention called the "electronic wallet." (*Id.* at ¶ 5.) The "electronic wallet" allegedly was designed to be a secure storage device for critical information such as account numbers and PIN numbers. (Phelps Aff. ¶ 4.) The "electronic wallet" also purportedly could be used to disallow access to certain computer programs. (*Id.*)

DTV disputes Kompas's allegation that he bought the Bootloaders for Phelps. DTV offers the testimony of two expert witness – James Whalen and William Gatliff – who both opine that Bootloaders' only plausible use is circumventing DTV's access system. (PPFOF ¶ 23.) Furthermore, Kompas possessed all the DTV satellite equipment necessary to receive DTV satellite programming without authorization. (*Id.* at ¶ 27.) Thus, according to DTV, it is more likely than not that Kompas used the Bootloaders to intercept DTV's programming, rather than merely giving them to Phelps for his "electronic wallet."

**STANDARD OF REVIEW**

The Court will only grant summary judgment if the pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits, show that there is no genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). All

3

factual inferences are made in the light most favorable to the nonmoving party. *See Hall v. Bennett*, 379 F.3d 462, 465 (7th Cir. 2004).

**DISCUSSION**

DTV essentially raises three claims. First, DTV alleges that Kompas illegally intercepted its satellite signals in violation of 47 U.S.C. § 605(a) and 18 U.S.C. § 2511(a)(1). Second, DTV alleges that Kompas "imported . . . to the United States, manufactured, assembled, modified, sold or distributed signal theft devices," in violation of 47 U.S.C. § 605(e)(4). Finally, DTV claims that Kompas possessed pirate access devices in violation of 18 U.S.C. § 2512(1)(b).

Kompas did not present any argument attacking DTV's second claim pursuant to § 605(e)(4). Thus, with regard to that claim, summary judgment must be denied. However, with regard to DTV's third claim pursuant to § 2512(1)(b), DTV stated in its response brief that it was withdrawing that claim. Accordingly, summary judgment will be granted dismissing the § 2512(1)(b) claim. The only claim left for the Court to examine, therefore, is whether Kompas intercepted DTV's satellite signals in violation of 47 U.S.C. § 605(a) & 18 U.S.C. § 2511(a)(1).

The evidence presented in this case, construed in a light most favorable to DTV, is the following: (1) that in September and December of 2001, Kompas purchased five Bootloaders; (2) two expert witnesses, William Gatliff and James Whalen, opine that Bootloaders only can be used to intercept DTV's satellite signals; and (3) Kompas owned all

4

the satellite equipment necessary to receive DTV satellite programming. Kompas alleges in his affidavit, though, that he did not use the Bootloaders to intercept DTV's signals, but rather gave them to his friend who was using the Bootloaders to create an invention called the "electronic wallet."

Despite Kompas's allegations to the contrary, DTV has presented sufficient evidence to create a triable issue of fact as to whether Kompas actually intercepted DTV's satellite signals without authorization. A recent case from the Eastern District of Michigan is instructive. In *DirecTV v. Karpinsky*, 274 F.Supp.2d 918 (E.D. Mich. 2003), DTV sued an individual for violation of 47 U.S.C. § 605(a) and 18 U.S.C. § 2511(1)(a). Initially, the court in *Karpinsky* granted the defendant's motion for summary judgment because DTV only provided evidence that the defendant possessed pirating devices, not that he ever subscribed to DTV services or owned the necessary satellite reception equipment. *Id.* at 920. However, in DTV's motion for reconsideration, DTV proffered additional evidence that the defendant purchased DTV satellite equipment. *Id.* This additional evidence that the defendant owned DTV satellite equipment, combined with the defendant's possession of pirating devices, persuaded the court that a reasonable fact-finder could infer that the defendant intercepted DTV's satellite signals. *Id.* at 921. The court, therefore, granted DTV's motion for reconsideration and denied the defendant's motion for summary judgment. *Id.* at 922.

In the instant case, DTV has proffered more evidence than it did in *Karpinsky*. In addition to evidence that Kompas owned pirating devices and DTV satellite equipment, DTV

5

also provides two expert witnesses who opine that the pirating devices that Kompas possessed could only be used to intercept DTV satellite signals. Accordingly, DTV has created a triable issue of fact as to whether Kompas actually intercepted DTV's satellite signals without authorization.

**NOW, THEREFORE, BASED ON THE FOREGOING, IT IS HEREBY ORDERED THAT**:

Kompas's Motion for Summary Judgment (Docket No. 16) is **GRANTED**, in part, to the extent that DTV cannot assert a cause of action pursuant to 18 U.S.C. § 2512(1)(b). Kompas's Motion for Summary Judgment is **DENIED**, in part, to the extent that there is a genuine issue of material fact as to whether Kompas violated 47 U.S.C. §§ 605(a) & 605(e)(4) and 18 U.S.C. § 2511(a)(1).

The Court has set a telephonic scheduling conference for Wednesday, April 12, 2006 at 11:30 a.m. (Central Time) to schedule the Final Pretrial Conference and Court Trial. The Court will initiate the call.

Dated at Milwaukee, Wisconsin this 22nd day of March, 2006.

                **BY THE COURT**

                s/ Rudolph T. Randa
                **Hon. Rudolph T. Randa**
                **Chief Judge**